LINDSAY, Judge.
The defendant, Wal-Mart Stores, Inc., appeals as excessive a trial court judgment awarding damages of $25,000 to the plain *1272 tiff, Claudette Jones, for false imprisonment. For the reasons assigned below, we amend the judgment, reducing the award to $10,000, and, as amended, we affirm the trial court judgment.
FACTS
On March 22, 1990, the plaintiff and her three-year-old daughter went shopping at the Wal-Mart store in Mansfield, Louisiana. They were accompanied by the plaintiffs older sister and her daughter. The plaintiff, who was wearing a pair of black patent leather shoes that she had owned for more than a year, tried on some tennis shoes in the store’s self-service shoe department.
While the plaintiff was in the shoe department, Gary Wood, the assistant manager, observed her and decided that she had “a suspicious nature.” He began to watch her and concluded that she was trying to steal the “real nice looking” shoes she was wearing. He alerted other store employees to be on watch for the plaintiff.
When the plaintiff and her sister finished their shopping, they stopped at the service desk so the plaintiff could place an item on layaway. The employee at the layaway desk asked the plaintiff if she wished to pay for the shoes. The plaintiff did not understand her question, and the employee did not pursue the matter. The women then paid for their respective purchases at a check-out stand and began to leave the store.
At this point, the plaintiff was stopped at the door by Wood and another male employee. The men told her they needed to talk to her about the shoes and escorted her to an office in the back of the store. The plaintiff’s sister was not allowed to accompany her into the office.
Wood accused the plaintiff of stealing the shoes she was wearing. The plaintiff, who became extremely upset and began to cry, told Wood that she had purchased the shoes elsewhere. She even told him where she had bought them. The plaintiff also asked Wood to examine the shoes to ascertain that they were worn. Despite her request, Wood made no close examination of the shoes.
However, Wood did inform the store manager that he thought he might have made a mistake. The manager told him that, since the plaintiff probably already had grounds to sue, he was to go ahead and call the police anyway. The police were summoned, and Wood filled out a complaint against the plaintiff.
The plaintiff’s father, who had been alerted to the situation by the plaintiff’s sister, came to the store shortly after the police arrived. He too asked Wood to examine the plaintiff’s shoes to determine their condition, but his request was likewise ignored. Officer Joseph Pratt of the Mansfield Police Department took Wood’s complaint and informed the plaintiff and her father that the plaintiff would have to accompany him to the police station.
The officer escorted the plaintiff, who had been detained for almost an hour, through the store. Many interested shoppers, hearing that a shoplifter had been caught, had stopped in the aisles to see what was happening. Several customers recognized the tearful plaintiff and her father as they were being led out of the store by Officer Pratt.
Officer Pratt was acquainted with the plaintiff and her father. He allowed the plaintiff, who was still extremely upset, to ride to the police station in her father’s car instead of being transported in a patrol car.
At the police station, the plaintiff was separated from her father and placed in another room. Officer Pratt asked her to remove her shoes. He and Chief Don English examined them and determined that the shoes were obviously well-worn. Having determined that the plaintiff was the owner of the shoes, no charges were filed, and the plaintiff was released within thirty minutes of her arrival at the police station. By then, several concerned family members and friends had gathered outside the station.
The plaintiff filed suit against Wal-Mart and Wood for false imprisonment. Trial was held on September 16, 1991. The trial court issued a written opinion in which it *1273 found that the defendants had no reasonable cause to stop and detain the plaintiff. It awarded the plaintiff damages in the amount of $25,000. However, the trial court specifically found no personal liability on the part of Gary Wood. Accordingly,, the judgment was rendered against Wal-Mart alone.
Wal-Mart appealed, asserting that the damage award is excessive. No issue of liability is presented. Therefore, that portion of the trial court judgment is final. The plaintiff answered the appeal, contending that the award is inadequate.
LAW
Before a trial court award for damages can be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. A damage award should not be disturbed by a reviewing court absent a showing of a clear abuse of the discretion vested in the trial court. Carroll v. St. Paul Insurance Company, 550 So.2d 787 (La.App.2d Cir. 1989); Reck v. Stevens, 373 So.2d 498 (La. 1979).
It is only after an articulated analysis of the facts discloses an abuse of discretion that resort to prior awards in similar eases is proper. Carroll, supra.
The appropriate procedure for testing whether the trier of fact has abused its discretion by making an excessive award is to determine whether the award can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the fact finder. The converse of this rule is also true. In determining whether the trier of fact abused its discretion in making an inadequate award, the evidence must be viewed in the light most favorable to the defendant. Higginbotham v. Ouachita Parish Police Jury, 513 So.2d 537 (La.App.2d Cir. 1987); Carroll, supra.
DISCUSSION
Wal-Mart appealed, contending that the award of $25,000 is excessive, and that an award of $5,000 would be sufficient to compensate the plaintiff for her embarrassment. In contrast, the plaintiff answered the appeal, maintaining that the award is abusively low and that it should be increased to $52,500.
In this case, the trial court found that the plaintiff was highly embarrassed and traumatized by the incident and that her reputation was injured. Prior to this incident, the plaintiff had been active in her church and community activities. Now, she feels that she can no longer play the piano for area churches. She has received anonymous phone calls wherein she has been called a thief. She is nervous when shopping in other stores, believing that others are watching her. Her young daughter believes that the plaintiff was arrested for stealing and that her mother can no longer shop in Wal-Mart. Also, several of the plaintiffs friends no longer visit her as they once did.
We cannot agree that the evidence supports such a large award to the plaintiff even after interpreting the evidence in the light most favorable to her. For the most part, the plaintiffs damages are limited to her apparent embarrassment and humiliation. She was not subjected to any physical or verbal abuse during the incident. Nor was the plaintiff handcuffed, fingerprinted, photographed, or placed in a jail cell by the police. On the contrary, her father was allowed to drive her to the police station where she was released within a short period of time.
Additionally, there is no evidence that the plaintiff suffered economically. Without being asked, she explained the incident to her employer who took no action against her. The incident has apparently not affected her ability to perform her employment. Given these circumstances, the trial court award of $25,000 in damages is excessively high and therefore constitutes an abuse of its discretion.
*1274 Having found that the trial court abused its discretion by making an excessively high award, we may only lower the award to the highest reasonable point. Carroll, supra. Only after a determination of abuse of discretion has been reached, as in the present case, is a resort to prior awards appropriate for purposes of then determining what would be an appropriate award for the present case. Reck, supra; Carroll, supra.
In West v. Wal-Mart Stores, Inc., 539 So.2d 1258 (La.App.3d Cir.1989), writ denied, 543 So.2d 19 (La.1989), damage awards of $3,000 and $2,000 for a woman and her husband were reduced to $1,000 and $700 respectively where the couple were unjustly accused of failing to pay for merchandise. The court based the reduction on the brief amount of time involved (the incident itself lasted less than five minutes and the couple remained in the store afterwards for less than 30 minutes complaining to the management) and the lack of any residual emotional and/or psychological trauma (although the original incident caused Mrs. West to cry).
In Thomas v. Schwegmann Giant Supermarket, Inc., 561 So.2d 992 (La.App. 4th Cir.1990), the plaintiff was subjected to false imprisonment and aggravation of a preexisting injury when she was apprehended for suspected shoplifting in the presence of her grandchildren. The appellate court found that the plaintiff was entitled to damages for her physical injury and the resulting chiropractic treatment. The court found that she was also entitled to $5,000 for her wrongful detention. In Thomas, the evidence revealed that the plaintiff, who became hysterical and was later prescribed Valium for nervousness, was questioned in a private room for approximately twenty minutes. She testified that the guards called her “dumb” and cursed, threw her driver’s license on the floor, and tried unsuccessfully to force her to sign a confession. When the male guards sent for a female employee to search her, the plaintiff voluntarily displayed the contents of her purse, emptied her pockets, and opened her blouse to show that she had not taken the item in question.
In Bender v. Schwegmann Bros. Giant Supermarket, Inc., 452 So.2d 771 (La.App. 4th Cir.1984), an award of $9,000 was upheld where the defendant’s employees subjected the plaintiff to rudeness and public indignities at the time of her arrest. In that case, talk of the arrest spread throughout the plaintiff’s neighborhood, where she had enjoyed a good reputation for law-abiding conduct and community service. The court found that in addition to causing the plaintiff embarrassment and humiliation, the incident aggravated a preexisting nervous condition which already required medication. For many weeks after her arrest, she experienced extreme nervousness and had great difficulty in falling asleep.
In Irvine v. Schwegmann Bros. Giant Super Markets, Inc., 376 So.2d 1308 (La. App. 4th Cir.1979), writ denied, 378 So.2d 1389 (La.1980), an award of $12,000 was upheld where the 65-year-old plaintiff was dragged by the collar into a back room and searched after a suspected shoplifting. In the process, the plaintiff’s coat was ripped. The plaintiff was held until the police arrived, whereupon he was transported to jail, photographed, fingerprinted, arrested and jailed until a bond was posted. He received an unspecified injury which caused him to seek medical treatment. His doctor prescribed medication and ordered x-rays to be taken. The plaintiff also incurred attorney fees and was required to attend two court proceedings as a result of the criminal charges filed against him.
In Thomas v. Winn Dixie Louisiana, Inc., 477 So.2d 925 (La.App. 4th Cir.1985), the court affirmed an award of $22,500 where the plaintiff presented the testimony of two expert witnesses to verify that she suffered a psychological reaction that lasted more than two years after the incident in which she was accused of shoplifting.
In Hernandez v. Schwegmann Giant Supermarkets, 464 So.2d 902 (La.App. 4th Cir.1985), the court found that the evidence supported an award of $23,000. In that case, a woman was unlawfully detained for three hours in the store security office and *1275 was threatened that her 12-year-old son would be turned over to juvenile authorities if relatives did not pick him up before she was taken to jail. In the presence of her son, the plaintiff was rudely told to relinquish her driver’s license, sit down, and shut up. The police were summoned, and she was escorted through the parking lot, in view of several people, to a police car. During this walk, the police officers stopped to talk to a friend, causing the plaintiff additional embarrassment. At the police station, she was fingerprinted, searched, temporarily dispossessed of her valuable possessions, photographed and jailed for four hours until bond was posted.
In Hernandez, the plaintiffs family physician testified that before the incident she was in good health with “minimal ailments.” After the incident, the plaintiff required medication for depression, nervousness, and insomnia. Her doctor found it necessary to refer her to a dermatologist for treatment of rashes. The plaintiff was also unable to maintain her previous level of job performance. Due to her nervousness, she stepped down as head of her university department to accept an associate’s position. Furthermore, the plaintiff was also required to make two court appearances and to hire an attorney to represent her on the criminal charges.
In the instant case, after comparing the plaintiff’s injuries to those sustained by the plaintiffs in the cases discussed above, and comparing the damage award in this case with prior damage awards, we conclude that the highest award that could have been granted in the plaintiff’s favor was $10,000. Accordingly, we reduce the plaintiff’s award from $25,000 to $10,000.
CONCLUSION
For the above stated reasons, the trial court judgment is amended to reduce the damage award to the plaintiff to $10,000. As amended, the judgment is affirmed.
Therefore, it is ordered, adjudged and decreed that the defendant, Wal-Mart Stores, Inc., pay unto the plaintiff, Claudette Jones, the sum of $10,000, plus legal interest thereon from date of judicial demand, until paid. All costs in this court and in the court below are assessed against Wal-Mart Stores, Inc.
AMENDED, AND, AS AMENDED, AFFIRMED.