Dear Representative Rousselle:
We are in receipt of your request for an Attorney General's opinion regarding the power of the legislature over home rule charter governments. Your letter sets forth the following facts: R.S. 16:574 imposes a duty on the parish governing authority which operates under a home rule charter to fund the operating budget of the district attorney's office in accordance with the district attorney's request which may include an increase of 10% for certain expenses without the governing authority's consent. Your letter seeks our opinion on the following question:
 Whether the legislature has the power to impose the financial burden including annual increases on a home rule charter local governing authority without its consent?
Since it is a fact that the legislature enacted R.S. 16:574 and said law imposes a duty on the parish of Plaquemines for payment of expenses of the district attorney's office in the Twenty-Fifth Judicial District your question is really one of the constitutionality of the law. Our office rarely opines on the constitutionality of the law other than to say that an elementary principle of statutory construction in constitutional law holds that all statutory enactments are presumed to be constitutionalInterstate Oil Pipe Line Co. v. Guilbeau, 217 La. 160, 46 So.2d 113
(1950); State on behalf of J.A.V., 558 So.2d 214 (La. 1990). While we regret to inform you that it is not our policy to provide an opinion on a constitutional challenge as same is an important problem of law which is more appropriate for decision by our judicial system we will proceed to inform you of our research and knowledge of this area of the law so that an informed decision on this issue may be made.
R.S 16:574 mandates payment by the governing authority of the parish of Plaquemines of an operating budget for the district attorney of the Twenty-Fifth Judicial District and for expenses which include salaries and the statute further provides that "any salary increase in any one year exceeding ten percent of the preceding gross annual salary shall be subject to the approval of the parish governing authority". This language can be interpreted to mean that a salary increase at or below ten percent is required to be budgeted by the parish governing authority even though they have not approved same.
Since the parish of Plaquemines has operated under a home rule charter since September 5, 1961, R.S 16:574 may be subject to constitutional challenge on the basis that the mandatory financial burden on the parish conflicts with La. Const. Art. 6
§ 4 (1974) as the parish is immune from such legislative control. However a possible defense to such a constitutional challenge is the state's authority to enact such legislation under it's police power in Art 6 § 9 of the constitution as was the case in the 1983 supreme court opinion in City of NewOrleans v. State, 426 So.2d 1318 (La. 1983) [hereinafter referred to as "the 1983 opinion"] which will be discussed later in this opinion.
LSA-Const. Art. 6 § 9 (1974) provides in part "the police power of the state shall never be abridged". The Louisiana Supreme Court in City of New Orleans v. Board of Commissioners ofthe Orleans Levee District, 93-0690 (La. 7/5/94), 640 So.2d 237
[hereinafter referred to as "the 1994 opinion"] interpreted this section in conjunction with Section 4's grant of local autonomy as meaning that a local government cannot enact a conflicting law or ordinance which would hinder the state's power to initiate legislation and regulation necessary to protect and promote the vital interests of its people as a whole
The Plaquemines Parish home rule charter provides for an operating budget with detailed estimates of all proposed expenditures which cannot exceed the total of estimated revenues. R.S. 16:574 seems to imply that the expense of an increase in salary for an assistant district attorney at 10% or less of his preceding gross annual salary must be paid by the governing authority of the parish of Plaquemines from the general fund without having to be approved by the governing authority. Since the home rule charter provides for the adoption of an operating budget to be in effect for the calendar year any increase in salary for an assistant district attorney would seem to have to be made by amendment to the operating budget if not initially included in the budget.
All amendments to the operating budget are required by the charter to be proposed by either the President or Council and must be by ordinance and supplemental appropriations may be made only if the President certifies that funds are available for appropriation in excess of those estimated in the operating budget. See, Section 7.04 Plaquemines Parish Charter. This brings up several questions. First, whether the parish of Plaquemines' home rule charter provisions are in conflict with Art. 6 § 9 of the constitution i.e. whether they abridge the state's police power as was the case in City of New Orleans v. State, supra? Second whether R.S. 16:574 is a necessary law to protect the health safety welfare or morals of the people?
Our research did not reveal any cases which allege the unconstitutionality of R.S. 16:574 in particular. However the case of City of New Orleans v. State, supra, is on point. In this 1983 opinion of the Louisiana Supreme Court the court held that state statutes mandating payment by the City of New Orleans to state employees and officers including salaries of assistant district attorneys constituted a valid exercise of the state's police power and upheld the constitutionality of the state statutes in question. The court stated, "The autonomy of local governmental subdivisions with home rule charters is limited by general legislation enacted under the State's police power" Id. at 1321. "The only restriction on the State's power to enact legislation requiring the expenditure of funds by local political subdivisions is found in Art. 6 § 14, of the Louisiana Constitution of 1974 . . ." . Id.
LSA-Const. Art. 6, § 14 (1974) prohibits a law which requires increased expenditures for any purpose within a political subdivision until approved by the governing authority of the affected political subdivision the legislature appropriates the necessary funds or a law provides for a local source of revenue and authorizes the local government to levy and collect such revenue. The law further provides for exceptions one of which is a law which was enacted and effective prior to the adoption of the amendment of this Section of the Constitution by the electors of the state in 1991 LSA-R.S. 16:574 was enacted and effective prior to 1991, and therefore fits this exception. Therefore the question then becomes whether this exception in Art. 6 § 14, in effect allowing the legislature to increase the financial burden of a local governmental subdivision is constitutional?
Another similar case is Reed v. Washington Parish Police Jury,518 So.2d 1044 (La. 1988), wherein the Louisiana Supreme Court held that a parish police jury was required to fund reasonable expenses of a district attorney's office. This case however is distinguishable from the matter at hand in that a parish police jury does not possess the same constitutional powers as a home rule charter.
The most recent Louisiana Supreme Court decision on this subject matter, City of New Orleans v. Board of Commissioners of theOrleans Levee District, supra, their 1994 opinion examined the powers of home rule charter governments existing prior to the 1974 Louisiana Constitution, finding that Art. 6 § 4 of the constitution granted to all preexisting home rule governments the power of immunity from the control of the legislature i.e. local autonomy. Additionally the supreme court rejected the notion suggested by the lead author of their 1983 opinion City of NewOrleans v. State, supra, that Art. 6 § 4 of the 1974 Louisiana Constitution adopted by implied reference a 1921 constitutional provision that required the city's exercise of its home rule power to yield to any inconsistent general state law. In other words denying local autonomy. Nevertheless the supreme court's 1994 opinion did not overrule their 1983 opinion and therefore it is still controlling on the question of the state's police power versus local autonomy.
We do not pretend to know the answers to all of the questions presented herein and presented by the Louisiana Supreme Court by its' rejection of its' own prior opinions on the subject matter in its 1994 opinion City of New Orleans v. Board of Com'rs. ofOrleans Levee Dist., supra. However we are bound by the law the 1983 opinion of City of New Orleans v. State, supra, which limited the autonomy of the home rule charter government by upholding state statute's similar to the one in question under the State's police power. Nevertheless we are unable to answer and/or predict the outcome of a constitutional challenge of R.S.16:574, as the Louisiana Supreme Court's opinions on this subject matter have not been consistent.
Trusting this to be of sufficient information, we remain.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 _________________________ ANGIE ROGERS LAPLACE Assistant Attorney General
RPI\ARL:cwr
Enclosures
cc: Plaquemines Parish Council Plaquemines Parish District Attorney