JAMES F. McKAY III, Judge.
|/The defendant, J.D., appeals the judgment of the trial court adjudicating him delinquent relative to La. R.S. 14:63.3 and La. R.S. 14:108. J.D. appeals his adjudication based upon insufficiency of the evidence. We disagree with the appellant’s assertions and affirm the judgment of the trial court.
STATEMENT OF THE CASE
On January 26, 2010, J.D. was charged by delinquency petition with violating one count of La. R.S. 14:63.3, to wit, entry on or remaining on property after being forbidden, and La. R.S. 14:108, to wit, resisting an officer. On May 17, 2010, the court held an adjudication hearing where J.D. was found to be guilty on both charges.
A disposition hearing was held and the trial court committed J.D. to the Louisiana Department of Public Safety and Corrections for a period of six months on each count with the commitments to run concurrent. The trial court suspended six months of the commitment and placed J.D. on active probation for one year.
| .STATEMENT OF THE FACTS
On January 22, 2010, New Orleans Police Department Sergeant Michael Stalbert was working a paid detail at 3708 Forest Park Apartments. It is notable that Sergeant Stalbert was wearing his official New Orleans Police Department uniform while working this detail. While patrolling the grounds he observed J.D., a juvenile, which he had previously warned to stay off the apartment property, loitering on the property. After J.D. made eye contact with Sergeant Stalbert, he began to run away. J.D. was observed entering the apartment at 3821 Texas, which in within the Forest Park Apartments. Sergeant Stalbert eventually discovered J.D. sitting down behind a “stair wall”. When questioned by the Sergeant, he said his name was Randy D. He also informed the Sergeant that his date of birth was March 8, 1995.
Sergeant Stalbert testified that he knew J.D. because his family once lived at the Forest Park Apartments and previous juvenile encounters with J.D. Sergeant Stal-bert initially detained J.D. for truancy and for failing to remain away from the complex after being advised that he was trespassing.
The Forest Park Apartment Complex’s assistant manager, Shelly Lejeune, testified that on January 21, 2010, she observed J.D. on the apartment complex property. She testified that J.D. and his parents had resided in the complex until their eviction January 8, 2010.
I .ASSIGNMENTS OF ERROR
The appellant asserts that the trial court erred in finding that the State met its burden of proof that J.D. was in violation of La. R.S. 14:63[1] and La. R.S. 14:108[2].
*155 The State’s burden of proof in a juvenile delinquency proceeding, just as in a criminal proceeding against an adult, is to prove every element of the offense alleged beyond a reasonable doubt. La. Ch.C. art. 883. Appellate review of ]4juvenile cases extends to law and fact. La. Const. Art. V, § 10(B). As a court of review, we grant great deference to the juvenile court’s actual finding, credibility determination and assessment of witness testimony. State in the Interest of J.N., 2007-1229, p. 8 (La.App. 4 Cir. 5/7/08), 984 So.2d 910, at 915.
In State v. Brown, 2003-0897 (La.4/12/05), 907 So.2d 1, the Louisiana Supreme Court reiterated the standard for determining a claim of insufficiency of evidence. The appellate courts must follow the standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Id. Thus, this Court must view the evidence in the light most favorable to the prosecution, and determine if it was sufficient to convince a rational trier of fact that all of the elements of the crime were proven beyond a reasonable doubt. Id.
To support J.D.’s conviction for violation of La. R.S. 14:63.3, the State must establish beyond a reasonable doubt that J.D. went on to or remained upon the Forest Park Apartment’s property, without authority, after being forbidden to do so either orally or in writing by an authorized person.
The appellant argues that the State has failed to prove all of the requisite elements of La. R.S. 14:63.3. Specifically, the appellant asserts that the State failed to prove that J.D. was given a reasonably contemporaneous request to leave prior to being arrested for remaining on the premises contrary to the wishes of the owner and *156 that Sergeant Michael Stalbert had the authority to forbid J.D.’s entry onto the apartment complex property or to make demands for him to leave. He also asserts that he lacked the criminal intent to be in violation of the statute.
|fiIn State in the Interest of J.A.V., 558 So.2d 214, 215 (La.1990), the Court noted, “As jurisprudentially construed, La. R.S. 14:63.3 prohibits its entering or remaining in places or on land after being forbidden to do so, either orally or in writing, only after a reasonable contemporaneous request to leave. State v. Johnson, 381 So.2d 498 (La.1980).” In State in the Interest of J.A.V. and in State v. Johnson, both Courts reversed adjudications for this failure to contemporaneous request that the defendant leave the premises. Interestingly, the Court in State in the Interest of J.A.V., went on to say, referencing the case that:
On occasion some weeks or months before September 4, 1988, the juvenile had been involved in a dispute with El-Mart store officials regarding allegations of shoplifting. Nothing came of that encounter, because the juvenile was able to produce receipts for the items in her possession. The security guards nonetheless warned her not to come back into the store. When the juvenile did in fact return to the store on September 4, she was arrested and charged with violating R.S. 14:63.3, without having first been told to leave on that occasion.
While that statute, pertinently, simply prohibits going into a store such as K-Mart after having been forbidden to do so, this Court has determined that a logical interpretation of the statute “requires a reasonably contemporaneous or written request to leave as an indispensable element of the offense.” State v. Johnson, 381 So.2d at 500. A request is “reasonably contemporaneous if given a few hours prior to the arrest, the same day as the arrest or such other pre-arrest interval reasonable under the facts and circumstances of each particular case.” Id.
State in the Interest of J.A.V., at 215.
Although the exact meaning of a “contemporaneous” request is not crystal clear from the above opinion, the Louisiana Supreme Court does give some guidance to the lower courts by interjecting the language “other pre-arrest ‘interval’ reasonable under the facts and circumstances of each particular case.” The very use of the word “interval” is indicia of some time and space between factions, not contemporaneous in the common and familiar meaning of the word. Therefore, we can only conclude that contemporaneous request to leave the premises prior to arrest has to be reasonable period of time considering the facts and circumstances of the case.
Here, the State presented evidence that Sergeant Stalbert initially detained J.D. for truancy and then for failing to remain away from the apartment grounds after being advised that he was trespassing on several prior occasions between January 8, 2010 and his arrest on January 22, 2010, a thirteen-day span of time. The Sergeant testified that he had previously warned J.D. that he was trespassing upon the apartment grounds and was not authorized to enter the property on numerous occasions between January 8, 2010 and January 22, 2010. On January, 22, 2010, the date of the arrest, Sergeant Stalbert testified that the defendant fled and secreted himself under a second floor stairwell after the initial eye contact with the Sergeant. Additionally, J.D. identified himself to the Sergeant, after being questioned, as Randy D.[3], an intentional misidentification. *157 Sergeant admitted that he recognized J.D. from previous contacts and knew him by the alias of “Joker.”
Shelly Lejeune, the assistant manager of the apartment complex, testified that she had seen J.D. on the apartment premises on January 21, 2010, the day prior to his arrest, but that she did not confront him because she was alone in the office. Her testimony places J.D. on the apartment complex property within the relative time frame.
17Considering the facts and circumstance of this particular case and the testimony of both Sergeant Stalbert and Ms. Lejeune, there were reasonably contemporaneous requests for J.D. to leave and not remain on the property of the Forest Park Apartments. Thus, the State has satisfied the requisite contemporaneous request prong of the applicable statute.
Next the appellant asserts that there was insufficient evidence to prove Sergeant Stabert had the requisite “authority” to forbid J.D. from entering and remaining on the apartment complex property. The record supports the proposition that Sergeant Stalbert, while in his official NOPD uniform, was on a working paid detail at the Forest Park Apartment on January 22, 2010, the day of J.D.’s arrest, and on prior occasions when the requisite request/warnings to leave and not return to the premises were given.
It is indisputable that J.D.’s parents had been evicted from the Forest Park Apartments on January 8, 2010, and that J.D. was no longer a resident of the apartments on the day of his arrest. Sergeant Stal-bert was an off duty NOPD Sergeant on paid detail at the apartment complex and had been so for all relevant times from the eviction through the date of J.D.’s arrest. While J.D. stated that he was just passing through the apartment complex on his way to school when he was detained and arrested, it is incontrovertible that the arrest was at 11:53 a.m., further supporting Sergeant Stalbert’s testimony that J.D. was a truant. Given the sworn testimony of Sergeant Stalbert, it is incomprehensible that in his capacity as a New Orleans police officer on a paid security detail, he would not have the authority to [8arrest someone for trespassing on the very property that he was paid to secure. Therefore, appellant’s argument that Sergeant Stalbert did not possess the requisite authority to request that he leave and not return to the premises is in without merit.
Next the appellant asserts that he did not possess the requisite intent necessary to commit the offense charged. J.D. admitted to being on the premises. The testimony of Sergeant Stalbert confirms that after making mutual eye contact with J.D., J.D. ran into the building and hid under a second floor stairwell until discovered by the Sergeant. J.D. did not attempt to leave the premises after being spotted by Sergeant Stalbert, he fled. He had the opportunity to leave the premises but he chose to stay and concealed himself. There is no merit to appellant’s argument that he lacked the intent to remain on the property in violation of the statute.
The appellant also asserts that the trial court erred in adjudicating him delinquent charged of resisting an officer in violation of La. R.S. 14:108.
At trial Sergeant Stalbert testified that J.D. provided him with false identification by misrepresenting himself as his older brother Randy. As noted above, the Sergeant discovered J.D. hiding behind a staircase wall, clearly, in an attempt to thwart being discovered.
The defendant argues that because the Sergeant knew J.D. from because of previous encounters, Sergeant Stalbert was not *158 confused as to J.D.’s actual identity and he knew J.D. had given him a false name. This argument is baseless and has |9no bearing on the defendant’s intentional behavior to provide false and misleading information to the officer.
After discovering J.D.’s whereabouts Sergeant Stalbert elected to further investigate the incident and input J.D.’s information into his computer database. He was able to verify his assumptions that the defendant’s correct name was J.D., it matched his physical description, and that he had a previous conversation with J.D. about the apartment complex. All of this information was commensurate with the March 8, 1995 birth date J.D. had supplied to the Sergeant and also verified that J.D. was a juvenile.
It is of no moment that the Sergeant may have known or suspected that J.D. had given him a false name. J.D. still intentionally provided him with a false name during the Sergeant’s investigation on this matter. As required under La. R.S. 14:108, the State proved that J.D. resisted the officer by “intentionally interfering with, opposition or resistance to, or obstruction of the individual acting in his official capacity ...” by giving the Sergeant a false named during his investigation of the matter.
Based on the above and forgoing we find that the State provided the juvenile court with sufficient evidence to prove that J.D. violated every element of La. R.S. 14:63.3, and La. R.S. 14:108. As such, his adjudication of delinquency is affirmed.
AFFIRMED
BONIN, J., dissents with reasons.

. § 63.3. Entry on or remaining in places or on land after being forbidden
A. No person shall without authority go into or upon or remain in or upon or attempt to go into or upon or remain in or upon any structure, watercraft, or any other movable, or immovable property, which belongs to another, including public buildings and structures, ferries, and bridges, or any part, portion, or area thereof, after having been forbidden to do so, either orally or in writing, including by means of any sign here *155 inafter described, by any owner, lessee, or custodian of the property or by any other authorized person. For the purposes of this Section, the above mentioned sign means a sign or signs posted on or in the structure, watercraft, or any other movable, or immovable property, including public buildings and structures, ferries and bridges, or part, portion or area thereof, at a place or places where such sign or signs may be reasonably expected to be seen.
B. Whoever violates the provisions of this Section shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than five hundred dollars or imprisoned in the parish jail for not more than six months, or both.

. § 108. Resisting an officer
A. Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity.
B. (1) The phrase "obstruction of” as used herein shall, in addition to its common meaning, signification, and connotation mean the following:
(a) Flight by one sought to be arrested before the arresting officer can restrain him and after notice is given that he is under arrest.
(b) Any violence toward or any resistance or opposition to the arresting officer after the arrested party is actually placed under arrest and before he is incarcerated in jail.
(c) Refusal by the arrested or detained party to give his name and make his identity known to the arresting or detaining officer or providing false information regarding the identity of such party to the officer.
(d) Congregation with others on a public street and refusal to move on when ordered by the officer.
(2) The word “officer” as used herein means any peace officer, as defined in La. R.S. 40:2402, and includes deputy sheriffs, municipal police officers, probation and parole officers, city marshals and deputies, and wildlife enforcement agents.
C. Whoever commits the crime of resisting an officer shall be fined not more than five hundred dollars or be imprisoned for not more than six months, or both.

. Randy D. is J.D.'s older brother who was 21 at the time.